Richard WEISS, Director, Department of Finance and
Administration *v.* Jimmy R. McFADDEN, William W. Joplin,
and James T. French, *et al.*

02-1231                                            120 S.W.3d 545

Supreme Court of Arkansas
Opinion delivered June 26, 2003

*William E. Keadle*, for appellant.

*Nichols & Campbell, P.A.*, by: *H. Gregory Campbell* and *Mark W. Nichols*, for appellees.

JIM HANNAH, Justice. The Arkansas Department of Finance and Administration ("DFA") appeals an order of the Pulaski County Circuit Court granting partial summary judgment. The trial court found that the State violated Amendment 47 to the Arkansas Constitution when it attempted to tax benefits paid under an individual retirement account or a public or private employment related retirement system, plan or program ("retirement plan"), where the benefit taxed after-tax contributions being returned to the contributee.

This case involves only that portion of a retirement plan payment identified by the parties as the return of after-tax contributions to the plan beneficiary. In other words, what is at issue is whether a contributee who has paid income tax on the contribution made to the plan may be compelled to pay income tax on that same contribution later when the contribution is returned from the plan to the contributee. DFA agrees that the contribution is being subjected to income tax twice but argues that is the legislative intent. We note

that pre-tax contributions on which no income tax was ever paid by the contributee, employer contributions on which no income tax was ever paid by the contributee, and the gain produced over the years by the retirement plan on which no income tax was ever paid by the contributee are not at issue in this case.

Appellee taxpayers represent all taxpayers who have made after-tax contributions to retirement plans, and the action was brought to protect against the State taxing the receipt of after-tax contributions from retirement plans as income. DFA argues that under Ark. Code Ann. § 26-51-307 (Supp. 2001), the legislature has declared that the return of retirement plan after-tax contributions to a retiree is income. DFA further argues that the after-tax contributions are not property subject to the protection of Amendment 47. Appellee taxpayers asserted that the after-tax contributions constitute property, not income, and are thus not subject to income tax. Appellee taxpayers further argue that the attempt to levy a tax on the after-tax contributions constitutes an attempt by the State to levy an *ad valorem* tax on property in violation of Amendment 47 to the Arkansas Constitution.

We hold that when after-tax contributions to a retirement plan are returned to the retiree, that return is recovery of capital, which is not income. We further hold that the attempt to levy a value-based tax on the after-tax contributions constitutes an illegal exaction in that the State is attempting to levy a tax in violation of Amendment 47 to the Arkansas Constitution.

Jurisdiction properly lies in this court because the case requires the interpretation or construction of the Arkansas Constitution. Ark. Sup. Ct. R. 1-2(a)(1) (2003).

*Facts*

Appellee taxpayers brought an illegal-exaction suit under article 16, section 13, of the Arkansas Constitution, alleging the case was a class action as a matter of law. Appellee taxpayers set out their class as taxpayers who have contributed after-tax contributions to a retirement plan. The class members made after-tax contributions to a retirement plan during the course of their careers. Now that they have retired, the retirees receive retirement

benefits that they assert include a return of after-tax contributions. No attempt has been made by the parties to lay out the retirement plans or otherwise show what portion of benefits received is comprised of after-tax contributions.[1] Rather, the parties agree that some portion of the benefits is return of after-tax contributions, and the issue presented is simply whether the after-tax contributions returned constitute property or income.

The partial summary judgment did not resolve all the issues in this case. The circuit court certified this appeal pursuant to Rule 54 of the Arkansas Rules of Civil Procedure.

*Standard of Review*

Summary judgment is granted only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Spears v. City of Fordyce*, 351 Ark. 305, 92 S.W.3d 38 (2002). Once a moving party has established a *prima facie* entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* Upon review in this court, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion leave a material fact unanswered. *Id.* We view the evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.*

---

[1] The dissent mistakenly attempts to argue about the nature and terms of retirement plans. There is utterly no evidence before this court regarding the nature or the terms of any retirement plan. We are presented with the very simple issue of whether after-tax contributions returned to contributees constitutes income subject to income tax or property. The dissent attempts to argue matters outside the record which this court has stated repeatedly it will not do. *Rothbaum v. Arkansas Local Police*, 346 Ark. 171, 55 S.W.3d 760 (2001). Additionally, the dissent attempts to analyze the issues in this case as if the only retirement plans involved are plans whereby a person makes minimum contributions to receive a lifetime contractual right to benefits. The statute speaks to "public or private employment-related retirement systems, plans, or programs. . . ." Ark. Code Ann. § 26-51-307(c). Where some plans might involve extinction of any interest in the plan upon death of the contributee, others would not.

## *After-Tax Contributions*

DFA alleges that returned after-tax contributions are income subject to state income tax. DFA cites Ark. Code Ann. § 26-51-307 (Supp. 2001), which discusses retirement or disability benefits and provides:

(a)(1) The first six thousand dollars ($6,000) of benefits received by any resident of this state from an individual retirement account or the first six thousand dollars ($6,000) of retirement benefits received by any resident of this state from public or private employment-related retirement systems, plans, or programs, regardless of the method of funding for these systems, plans, or programs, shall be exempt from the state income tax.

(2) Only individual retirement account benefits received by an individual retirement account participant after reaching the age of fifty-nine and one-half (59 1/2) years qualify for the exemption. The only other distributions or withdrawals from an individual retirement account that qualify for the exemption before the individual retirement account participant reaches the age of fifty-nine and one-half (59 1/2) years are those made on account of the participant's death or disability. All other premature distributions or early withdrawals including, but not limited to, those taken for medical-related expenses, higher education expenses, or a first-time home purchase do not qualify for the exemption.

(b)(1)(A) Except as provided in subdivision (b)(2) of this section, the exemption provided for in subsection (a) of this section for benefits received from an individual retirement account or from a public or private employment-related retirement system, plan, or program shall be the only exemption from the state income tax allowed for benefits received from an individual retirement account or from any publicly or privately supported employment-related retirement system, plan, or program, excepting only benefits received under systems, plans, or programs which are by federal law exempt from the state income tax.

(B) No taxpayer shall receive an exemption greater than six thousand dollars ($6,000) during any tax year under the provisions of this section.

(2) The provisions of this section shall not apply to retirement or disability benefits received under a plan, system, or fund described in § 26-51-404(b)(7).

(c) No recipient of benefits from an individual retirement account or from public or private employment-related retirement

systems, plans, or programs shall be allowed to deduct or recover his cost of contribution in the plan when computing his income for state income tax purposes.

(d) An individual who is sixty-five (65) years of age or older and who does not claim an exemption under subsection (a) of this section shall be entitled to an additional state income tax credit of twenty dollars ($20.00). This credit is in addition to all other credits allowed by law.

DFA also cites Ark. Code Ann. § 26-51-404(b)(24)(B) (Supp. 2001), which provides:

Annuity income received through an employment-related retirement plan shall not be subject to the provisions of § 26-51-404(b). The income shall instead be subject to the retirement income provisions of § 26-51-307.

■ ■  This case involves arguments about the meaning of statutes. When reviewing issues of statutory interpretation, we keep in mind that the first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Cave City Nursing Home, Inc. v. Arkansas Dep't of Human Servs.*, 351 Ark. 13, 21-22, 89 S.W.3d 884 (2002); *Yamaha Motor Corp., U.S.A. v. Richard's Honda Yamaha*, 344 Ark. 44, 38 S.W.3d 356 (2001). When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Cave City, supra; Burcham v. City of Van Buren*, 330 Ark. 451, 954 S.W.2d 266 (1997). A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *ACW, Inc. v. Weiss*, 329 Ark. 302, 947 S.W.2d 770 (1997). When a statute is clear, however, it is given its plain meaning, and this court will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language used. *Ford v. Keith*, 338 Ark. 487, 996 S.W.2d 20 (1999). This court is very hesitant to interpret a legislative act in a manner contrary to its express language, unless it is clear that a drafting error or omission has circumvented legislative intent. *Id.*

■  We also note that this case includes an argument that the tax as applied to after-tax contributions constitutes a violation

of the Arkansas Constitution. In *Reinert v. State*, 348 Ark. 1, 71 S.W.3d 52 (2002), we stated:

> Statutes are presumed constitutional, and the burden of proving otherwise is on the challenger of the statute. *Bunch v. State*, 344 Ark. 730, 43 S.W.3d 132 (2001); *Ford v. Keith*, 338 Ark. 487, 996 S.W.2d 20 (1999). If it is possible to construe a statute as constitutional, we must do so. *Jones v. State*, 333 Ark. 208, 969 S.W.2d 618 (1998). Because statutes are presumed to be framed in accordance with the Constitution, they should not be held invalid for repugnance thereto unless such conflict is clear and unmistakable. *Kellar v. Fayetteville Police Department*, 339 Ark. 274, 5 S.W.3d 402 (1999) (*citing Board of Trustees of Mun. Judges & Clerks Fund v. Beard*, 273 Ark. 423, 426, 620 S.W.2d 295, 296 (1981)).

*Reinert*, 348 Ark. at 4.

First, with regard to statutory interpretation, the statutes in question are plain and unambiguous. We will therefore give the statutes their plain meaning. Section 26-51-307(c) clearly provides that cost of contributions to a retirement plan may not be deducted in computing income for State tax purposes. Section 26-51-404(b)(24)(B) provides that annuity income from retirement plans is subject to section 26-51-307 rather than section 26-51-404(b). As noted, a retirement plan could contain pre-tax contributions upon which no income tax has ever been paid; employer contributions upon which no income tax has ever been paid; after-tax contributions upon which income tax has been paid; and the gain from pre-tax contributions and after-tax contributions upon which no income tax has ever been paid. The above quoted statutes speak to income. The question is narrow — whether after-tax contributions returned to the taxpayer constitute income.

The State argues that the after-tax contributions are income when returned to a retiree based on paragraph (c) of section 26-51-307, which specifically forbids a taxpayer from deducting or recovering his cost of contribution in the plan when computing income. Section 26-51-404(b)(24)(B) likewise discusses annuity income from retirement plans. We also note that DFA argues that the $6000 exemption of Ark. Code Ann. § 26-51-307(a)(1) shields the after-tax contributions from taxation, which DFA argues results in only actual income or gain on retirement plans being taxed. Section 26-

51-307 makes no mention of after-tax contributions. Section 26-51-307(a)(1) provides a $6000 exemption for the first $6000 of income received under a retirement plan.

*Income*

In Arkansas, a tax is imposed on the entire income of every resident. Ark. Code Ann. § 26-51-201 (Repl. 1997). Gross income is defined, in part, as "gains, profits, and income derived from salaries, wages, or compensation for personal service of whatever kind. . .or dealings in property, whether real or personal, growing out of the ownership of, use of, or interest in the property; also from interest, rent, royalties, dividends, annuities. . . ." Ark. Code Ann. § 26-51-404(a)(1) (Supp. 2001). Currently, the income or gain generated by an employment related retirement plan is income. Ark. Code Ann. § 26-51-404(b)(24)(B).

Income is not defined under the Arkansas Income Tax Act of 1929. In a decision predating the 1929 Income Tax Act, Justice Hart, in a concurring opinion in *Sims v. Ahrens*, 167 Ark. 557, 271 S.W. 720 (1925), cited several cases from foreign jurisdictions and stated that income for purposes of income taxation income "may be defined as the gain derived from capital, from labor, or from both combined." *Sims*, 167 Ark. at 592. Although this definition offered by Justice Hart is now almost eighty years old, the definition remains consistent with how other States define income. In *Holt v. New Mexico Department of Taxation & Revenue*, 133 N.M. 11, 59 P.3d 491 (2002), the New Mexico Supreme Court stated:

> Some courts have turned to dictionary definitions of the word "income" in order to address similar arguments, defining income as "a gain or recurrent benefit usu[ally] measured in money that derives from capital or labor." *Lucero v. Comm'r of Revenue*, No. 7404 R, 2002 WL 1732987, at 3 (Minn. T.C. July 24, 2002) (quotation marks and quoted authority omitted) (alteration in original). "Wages, by common definition, constitute payment for employment services. . . . *See, e.g., Black's Law Dictionary* 766, 1573 (7th ed.1999) (defining 'income' as 'payment that one receives . . . from employment' and 'wage' as 'Payment for labor or services')." *Snyder v. Ind. Dep't of State Revenue*, 723 N.E.2d 487, 490 (Ind. T.C.2000) (citation omitted) (second omission in original), *cert. denied*, 735 N.E.2d 233 (Ind.2000). Finally, as dis-

cussed below, "income" is an extremely broad term defined by context. Income, in the context of taxes, includes within its definition employment wages and salaries, as well as "gains derived from dealings in property," interest, rents, and royalties, among many other categories. Section 61.

*Holt*, 59 P.3d at 495. *See also Mayer & Schweitzer, Inc. v. Director, Div. of Taxation* 20 N.J.Tax 217 (N.J. Tax 2002). Income is gain derived from capital. *Waite v. Waite*, 21 S.W.3d 48 (Mo. Ct. App. E.D. 2000); *Sims, supra*. Income is also gain derived from labor. *Sims, supra*.

### Taxation of Gain

■ ■ Justice Hart, in his concurring opinion in *Sims*, went on to state:

A tax on income, as thus defined and ascertained, is not a property tax. The income or gain thus derived from capital, from property, from labor, or from both combined, because of its fluctuating and indeterminate nature, during this period and process of its making, has not yet become an investment or an increment to the permanent wealth or property of the individual who has to pay the tax, and therefore it is not a property tax.

*Sims*, 167 Ark. at 593. Where gain from labor or capital has not become an investment or, in other words, a permanent addition to the wealth of a person, it is income subject to taxation. However, as DFA noted, in *Stanley v. Gates*, 179 Ark. 886, 19 S.W.2d 1000 (1929), this court stated this quite clearly:

It has been well said that 'a tax on incomes is not a tax on property, and a tax on property does not embrace incomes.' Hence a majority of the court holds that 'property,' as the term is used in art. 16, § 5, of the Constitution, means the property itself as distinguished from the annual gain or revenue from it.

*Stanley*, 179 Ark. at 893-94. Property is to be distinguished from gain or, in other words, income.[2] Justice Hart, in his concurring opinion in *Sims, supra*, cited *Waring v. Savannah*, 60 Ga. 93 (1878), wherein the Georgia Supreme Court stated, "The fact is, property

---

[2] The dissent fails to distinguish between property and gain or income, discussing instead an "income stream." Income stream as used by the dissent simply characterizes the amount that is received and fails to make the required distinction between property and gain.

is a tree; income is the fruit; labor is a tree; income is the fruit; capital is a tree; income is the fruit." *Waring*, 60 Ga. at 6.

■ The after-tax contributions were made with after-tax or net income, and "net income, after expenses are paid, becomes property when invested, or if it be money lying in a bank, or locked up at home." *Waring*, 60 Ga. at 99. DFA characterizes the after-tax contributions as income when they are returned to the contributees; however, that characterization does not alter the fact that the after-tax contributions simply are not income subject to income taxation. In *Benua v. City of Columbus*, 170 Ohio 64, 68–69, 162 N.E.2d 467 (1959), the Ohio Supreme Court stated that "a tax levied on account of ownership of intangible property does not become an income tax simply because the amount of the tax is determined from or based on the income thereof." *See also Von Ruden v. Miller*, 231 Kan. 1, 642 P.2d 91 (1982). In other words, just because the State chooses to characterize a tax as an income tax does not make it an income tax. The after-tax contributions are property or, in other words, capital that is to be distinguished from the gain from the capital. *See Stanley, supra.*[3]

■ ■ In the present case, the taxpayers have already paid federal and state income taxes on the money contributed to the retirement plan. Money that a taxpayer has paid state and federal income taxes on is property owned by the taxpayer. The taxpayers are simply receiving their own property when the after-tax contributions are returned. There are no tax consequences for recovery of capital. *Berkley v. Gavin*, 756 A.2d 248, (Conn. 2000).[4] In *Stanley*, we explained that "'property,' as the term is used in art. 6, § 15, of the Constitution, means property itself as distinguished from the annual gain or revenue from it." 179 Ark.

[3] The dissent fails to understand the distinction between income and property. The dissent asserts that a contributee who has paid a lower tax or no tax on his or her contributions because of his or her financial situation at the time the contributions were made would have to pay income tax on the contribution when it was returned. The dissent is wrong. What is at issue in this case is only the after-tax contributions, or in other words, contributions of the person's own property. If the person did not owe taxes on the money when earned, the money is his or her property when contributed, and property, or recovery of capital, is not subject to taxation as income when returned.

[4] We note that under the federal tax laws, the employee who has paid taxes on contributions will recover his or her contribution as non-taxable in different ways depending on the nature of the retirement plan. *See Malbon v. U.S.*, 846 F. Supp. 900 (1994).

at 893-94. Clearly, this court has recognized and characterized what is property and what is income. *Stanley, supra; Sims, supra.* The gain or revenue from the property is to be distinguished from the property. *Stanley,* 179 Ark. at 893-94.

We conclude that the return of after-tax contributions is recovery of capital, and that such contributions are property, not income or gain. Therefore, they are not subject to income taxes.

*Amendment 47*

Amendment 47 to the Arkansas Constitution prohibits the State from levying an *ad valorem* tax on property. An *ad valorem* tax taxes property found in the State. *Arco Auto Carriers v. Bennett,* 232 Ark. 779, 341 S.W.2d 15 (1960) *appeal dismissed and cert. denied,* 365 U.S. 770 (1961). An *ad valorem* is a tax on the value of property. *Borchert v. Scott,* 248 Ark. 1041, 460 S.W.2d 28 (1970). At issue in this case is taxation of money invested by the contributee in a retirement plan. Money is intangible personal property. *Michigan Nat. Bank v. Department of Treasury,* 127 Mich. App. 646, 339 N.W.2d 515 (1983); *see also First South, P.A. v. Yates,* 286 Ark. 82, 689 S.W.2d 532 (1985). If Ark. Code Ann. §26-51-201 (Repl. 1997) were applied to the return of the after-tax contributions as DFA requests, then the tax would be an amount calculated on a percentage of the amount of money returned, or in other words, it would be a tax based on the value of the money returned. That would make it an *ad valorem* tax. DFA asserts, however, that a tax under Ark. Code Ann. § 26-51-201 is an income tax because the legislature says it is an income tax. However, because the money returned is after-tax funds, or in other words, recovery of capital by the taxpayer, it is not income, and the attempted taxation of the recovered capital cannot be an income tax. In *Dawson v. Kentucky Distilleries, Co.,* 255 U.S. 288 (1921), the United States Supreme Court stated that in federal taxation, "[t]he name by which the tax is described in the statute is, of course, immaterial. Its character must be determined by its incidents." *Dawson,* 255 U.S. at 292. Similarly, in the present case, the tax is not transformed into a lawful income tax just because the State asserts it is an income tax. The tax the DFA attempts to collect is a tax based on the value of property or, in other words, an *ad valorem* tax. Amendment 47 to the Arkansas

Constitution prohibits the State from levying an *ad valorem* tax on property. The conflict with respect to the application of Ark. Code Ann. § 26-51-307 to after-tax contributions returned to retirees is clear and unmistakable, and therefore unconstitutional. *Reinert, supra.*

Affirmed.

THORNTON, J., dissents.

CORBIN, J., not participating.

R AY THORNTON, Justice, dissenting. I respectfully dissent. In my view, the majority opinion is neither logically or legally sound. It is well established that an income tax is levied upon an income stream, whether derived from labor, or investments in capital. Certainly wages, interest, appreciation in property value, rents, royalties, social security distributions, and other such income streams are subject to income taxes.

By comparison, *ad valorem* taxes are levied on property owned by a person. Such taxes are levied annually, and must be paid regardless of whether the taxpayer derives any income from the taxable property. The source of the funds used in acquiring the property has no effect upon its taxable status for *ad valorem* tax purposes. For example, property acquired by gift, inheritance, savings distributions of marital property, appreciation of value in timber growth, or other means of acquisition of property, are all subject to an annual *ad valorem* tax, and are all subject to reappraisal of such property, no matter what source of funds are used to acquire the property.

Until the majority's opinion, I do not find any decision in any jurisdiction that the nature of the property upon which *ad valorem* taxes may be levied depends upon the source of the funds from which the property is accumulated. Nor do I find any citation of authority declaring that a stream of income flowing from an investment account cannot be subjected to an income tax. It follows that there is no authority holding that an imposition of income tax upon such an income stream converts the statutory income tax into an illegal *ad valorem* tax.

The majority holds that if the corpus of the retirement account is derived from employer's contributions, and employee's

contributions upon which no tax has been paid, together with the gain from such contributions, then an income tax on the distribution is valid. However, the majority holds that if an income tax is paid by an employee upon the contributions that the employee makes to the plan, that the income tax levy upon the distribution is transformed into an illegal *ad valorem* tax. No citation of authority is given to support this conclusion.

The applicable law is articulated in *Reinert v. State*, 348 Ark. 1, 21 S.W.3d 52 (2002), where the court stated:

> Statutes are presumed constitutional, and the burden of proving otherwise is on the challenger of the statute. If it is possible to construe a statute as constitutional, we must do so. Because statutes are presumed to be framed in accordance with the Constitution, they should not be held invalid for repugnance thereto unless such a conflict is clear and unmistakable.

*Id.* (citations omitted). The majority then cites applicable law established by our decision in *Stanley v. Gates*, 179 Ark. 886, 19 S.W.2d 100 (1926), where our court held:

> It has been well said that "a tax on incomes is not a tax on property, and a tax on property does not embrace incomes." Hence a majority of the court holds that "property," as the term is used in article 16 § 5 of the Constitution, means the property itself, as distinguished from the annual gain or revenue from it.

*Id.*

*Stanley* should dispose of the legal issues. Here, there is no tax levied on the corpus of the fund accumulated for the purpose of funding periodic payments to recipients of that income stream. There is no *ad valorem* tax on "property," but the periodic distribution of benefits paid monthly pursuant to a retirement plan are subjected to *income taxes*.

The majority cites no authority from this or any other state's holding that an income tax imposed upon a stream of money distributed from the corpus of a retirement plan should be treated as an *ad valorem* tax. Such authority simply does not exist, and should not be brought into existence by the majority's conclusion in this case.

There are many reasons that this interpretation is mistaken. First, the amount of money distributed to each individual retiree is not dependent upon the amount of money, if any, that an individual retiree has contributed to the pension plan. A retiree with a contribution minimally sufficient to qualify for the plan may receive much more in monthly distributions than he or she ever contributed, and by living long enough may enjoy benefits much greater than those received by a person who makes a huge contribution but only lives long enough to draw benefits for a few months. I know of no mechanism for computing an *ad valorem* tax upon an income stream, now classified by the majority as "property," that is so impossible to quantify.

The money received from the distribution of a retirement plan is a matter of contract. If an individual has a vested interest in the retirement system, that individual draws a benefit paid in accordance with the provisions of the retirement plan, and hopes that the plan is actuarily sound. Some private plans have capsized and have left the hopeful beneficiaries without retirement benefits. In those cases there certainly is no property upon which an *ad valorem* tax could be levied.

The majority recognizes that the income stream distributed to a retiree pursuant to Ark. Code Ann. § 26-51-307 (1987) is properly taxed as income received by the retiree when the source of the fund from which the distribution made consists of the employer contribution to a retirement plan. Also the majority recognizes that the income stream derived from gains on investments is to be taxed as income when received by the retiree. The majority states: "[A]s noted, a retirement plan could contain pretax contributions upon which no income tax has ever been paid," and states that there is no issue in this case as to levying of income taxes on a revenue stream produced by gains on investments, employer contributions, or pre-tax contributions by an employee.

In other words, according to the majority, an income tax may be levied upon the distribution of funds from the corpus of a retirement fund if the employee's contribution was pre-tax but a statute levying an income tax is transmuted into an *ad valorem* tax by the alchemy of some payment of income taxes on post-tax contributions by an individual employee, and as an *ad valorem* tax, it becomes unconstitutional.

The application of this untenable principle becomes even more strained if an individual has paid a lower or no tax on her contribution than that paid by another more affluent·contributor, or one with fewer dependants. Surely, this is not the intent of our constitution—that an individual with six dependants who therefore did not pay income taxes on her contribution to a retirement plan must pay income taxes on her retirement benefits, while another person is afforded a class action recovery under illegal exaction provisions of our constitution because he was in a higher income tax bracket, and therefore paid taxes before making his contribution.

The majority, in declaring this legislative act unconstitutional, is leading this state down a path that no other state has followed, and one that I an unwilling to travel. The decision in this case is untenable, and I respectfully dissent.