The Honorable Tommy Dickinson State Representative 711 Hodges Street Newport, Arkansas 72112-2709
Dear Representative Dickinson:
I am writing in response to your request for an opinion regarding the following question, which I have paraphrased slightly based on the information you provided: If an individual meets the service requirement for Mayor's retirement benefits under A.C.A. § 24-12-123, but is no longer serving as Mayor when he or she meets the age requirement for such benefits, what amount of benefit is he or she entitled to receive? Is the amount of the benefit one-half of the salary payable to the Office of Mayor when the individual becomes qualified for benefits, or instead is it one-half of the salary actually earned by the individual when he or she last served as Mayor?
RESPONSE
In my opinion, the language of the statute is reasonably construed to mean that an individual who qualifies for mayor's retirement under A.C.A. § 24-12-123, is entitled to receive an annual retirement benefit equal to one-half of the salary payable to the office of the mayor at the time when the individual becomes eligible for retirement benefits. I will note that one of my predecessors in office interpreted this statute to mean that the individual retiring is entitled to receive one-half of the salary that he or she earned when last serving as mayor. Op. Att'y Gen. 2005-203. However, after conducting my own research, I am constrained to opine that the conclusion I have reached is more in line with the rules of statutory *Page 2 
interpretation recognized by the Arkansas Supreme Court. Legislative clarification of the statutory language may be in order.
The statute in question, A.C.A. § 24-12-123, states in relevant part:
 In all cities of the first class in this state, any person who shall serve as mayor of the city for a period of not less than ten (10) years, upon reaching age sixty (60) . . . shall be entitled to retire at an annual retirement benefit during the remainder of the person's natural life payable at the rate of one one-half (1/2) of the salary payable to the mayor at the time of retirement.
A.C.A. § 24-12-123(a)(1)(A) (Supp. 2007).
Your questions suggest that the statute in question may be ambiguous because the words "the mayor" might refer to either the individual retiring or to the office of the mayor. The terminology that the statute uses when referring to the individual retiring is confusing because it appears to vary from subsection to subsection.
The first possible interpretation of the statute is that the words "the mayor" refer to the individual who is retiring. In my opinion, however, this is not the correct interpretation because it creates difficulties if, as in the present instance, the individual qualifying for benefits is no longer mayor when he or she qualifies for benefits. If "the mayor" refers to the person retiring, but that person has not served as mayor in several years, then the phrase "one-half (1/2) the salary payable to the mayor at the time of retirement . . ." begs the question, "What salary?" This question arises, of course, because the individual in question will no longer be earning a mayor's salary when he or she retires. Consequently, there will be no relevant salary to base retirement benefits on in this, presumably common, situation. One might argue that, where the individual retiring is not the sitting mayor, one must assume that "the salary payable to the mayor at the timeof retirement . . ." really means the last salary that the former mayor, who is now retiring, actually earned while serving as mayor.[1]
However, this interpretation finds little support in the language of the statute. In my opinion, the statutory language clearly demonstrates that "at the time of retirement" means at the time of benefits eligibility when it says that an individual who otherwise qualifies "upon *Page 3 reaching age sixty (60) . . . shall be entitled to retire at an annualretirement benefit[.]" A.C.A. § 24-12-123(a)(1)(A) (emphasis added).
Moreover, the individual who is retiring is referred to elsewhere in the same subsection with the word "person" as in "any person" or "the person." The subsection in question states that "the person's" retirement is to be based on "the salary payable to the mayor at the time of retirement." To find that "the person" and "the mayor" are one and the same would arguably render the legislature's choice of the two different terms within that subsection meaningless, contrary to the longstanding principle that "every word in a statute must be given effect if possible." Cupp v. Frazier's Heirs, 239 Ark. 77,387 S.W.2d 328 (1965).
The other possible interpretation of the statute is that the words "the mayor" refer, not to any individual mayor, but to the office of mayor. If this is the case, then the individual who retires under the terms of the statute is entitled to receive an annual retirement benefit equal to one-half of the salary payable to the office of the mayor at the time when such individual qualified for retirement benefits.
It is my opinion that this alternative represents a better and more rational interpretation of the language used by the General Assembly because it creates no difficulties where the individual qualifying for benefits is no longer mayor when he or she qualifies. This is because the relevant salary is the salary payable to the office of mayor rather than to a specific individual who may or may not earn "the salary payable to the mayor" at the time when he or she retires. Thus, the phrase "at the time of retirement" can be interpreted literally to mean at the time when the individual whose retirement the statute is addressing qualifies for benefits under the terms of the statute.[2] *Page 4 
Moreover, this interpretation is supported by the language of the statute[3] and gives meaning to the legislature's choice of different terminology within subsection (a)(1)(A) when referring to the individual retiring, i.e., "the person." In sum, it is my opinion that this interpretation constitutes a reasonable interpretation of the statutory language in question.
I note that, in order to be truly ambiguous, a statute must be susceptible to two or more reasonable interpretations. See, Weis v.McFadden, 353 Ark. 868, 120 S.W.3d 545 (2003); see also, Maddin v.Aldrich, 346 Ark. 405, 58 S.W.3d 342 (2001) (stating that absurd results should be avoided). Although I must agree that the meaning of the statute is not immediately clear, it is my opinion that a closer examination reveals that only one of the possible interpretations yields a reasonable result. For this reason, I must conclude that, despite the vague wording, the statute is not really ambiguous. Accordingly, although I have considered the language of the statute as a whole, I have not gone outside the language of the statute to search for legislative intent. See, Weis v. McFadden, 353 Ark. 868, 120 S.W.3d 545
(2003) (If a statute is not ambiguous, a court will not search for legislative intent, but will gather intent from the plain meaning of the language.); see, also, Ragsdale v. Wolverine Worldwide, Inc., 218 F.3d. 933 (8th Cir. 2000) (To ascertain the plain meaning of a statute, a court will look, not only to the particular language at issue, but to the language and design of the statute as a whole.)[4]
In my opinion, the statutory language chosen by the legislature means that an individual who qualifies for mayor's retirement under A.C.A. § 24-12-123, is entitled to receive an annual retirement benefit equal to one-half of the salary payable to the Office of the Mayor at the time the individual becomes eligible for retirement benefits. If the legislature intends a different result, I would recommend legislative clarification of the existing statute. *Page 5 
Assistant Attorney General Jennie Clingan prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL, Attorney General
[1] I will note that one may cease serving as mayor prior to becoming eligible for retirement because of defeat in a mayoral election, or for one of any number of other reasons unrelated to retirement.
[2] It was pointed out by my predecessor that this statute, as originally passed, contained the word "his" just before the word "retirement." It was suggested that the presence of the word "his" clearly showed that "the mayor" and the individual retiring were one and the same and that the removal of the word "his" from the codification in order to make the statute more gender neutral led to confusion. Op. Att'y Gen. 2005-203. I must disagree that the removal of the word "his" affected the meaning of the statute. First, adding the word "his" back into the statute does not solve the problem with the meaning of the phrase "at the time of retirement" that occurs when "the mayor" is interpreted to refer to the individual retiring. Second, adding the word "his" back into the statute does not affect the statute's meaning when "the mayor" is interpreted to refer to the office of the mayor, as "his retirement" can still easily be construed to mean the retirement of the individual who has qualified for benefits.
[3] "The" is a definite article and is often used as a function word to indicate that the noun that follows it is unique, e.g., "the Lord" or "the President." Merriam-Webster Online Dictionary, available atwww.marrian-webster.com/dictionary/the. For this reason, it is my opinion that the best interpretation of the words "the mayor" is that they refer to the office of mayor, which is unique.
[4] This approach is substantially different than that taken by my predecessor in Op. Att'y Gen. 2005-203. Having deemed the statute ambiguous because of the confusing language used, that opinion went on to use outside evidence of legislative intent to reach a result which, in my opinion, is contrary to the plain meaning of the phrase "at the time of retirement" within the context of this statute. *Page 1